Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE CUMBERLAND MUTUAL FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE E&S SPECIALTY and AMGUARD INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 24-5900 (ES) (JRA)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendants Nationwide E&S Specialty, also known as Scottsdale Insurance Company ("Scottsdale"), and AmGuard Insurance Company's ("AmGuard," together with Scottsdale ("Defendants")) motion to dismiss plaintiff The Cumberland Mutual Fire Insurance Company's ("Plaintiff" or "Cumberland") complaint (D.E. No. 1 ("Complaint" or "Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 34 ("Motion" or "Mot.")). Defendants' Motion is fully briefed. (D.E. No. 35 ("Mov. Br."); D.E. No. 38 ("Opp. Br."); D.E. No. 44 ("Reply Br.")). Having carefully considered the parties' submissions, and deciding this matter without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b), and for the reasons set forth below, Defendants' Motion is **GRANTED in-part** and **DENIED in-part**.

I.  **BACKGROUND**[1]

This declaratory judgment action stems from a fire that occurred on or about November 9, 2021, in a building located at 25 Weldon Road, Lake Hopatcong, New Jersey (the "Property"). (*See* Compl. ¶ 10). At the time of the fire, RLM Corporation ("RLM") owned the Property (*id.* ¶ 16; *see id.* ¶ 11), and Stones by Vincenzo, Inc. ("Stones") occupied the building on the Property as a tenant (*id.* ¶ 16). Following the fire, AmGuard—the insurance carrier for RLM—brought a subrogation claim in separate action before the Undersigned. (*Id.* ¶ 10); *AmGuard Ins. Co. v. Stones by Vincenzo, Inc.*, No. 22-5519 (ES) (JRA) ("Subrogation Action").[2] Plaintiff alleges that the fire resulted in total damages of $766,203.40 on a "Replace Cost Value" basis and $610,296.96 on an "Actual Cash Value" basis. (Compl. ¶ 17 nn. 4–5).

AmGuard "insured RLM for the building on the Property with a limit of $1,081,200." (*Id.* ¶ 11 (citing D.E. No. 1-2 (Ex. B to Compl. ("AmGuard Policy" or "AP")))). Plaintiff asserts that the AmGuard Policy "is a primary property policy." (*Id.* ¶ 12). When the fire occurred, Scottsdale insured Stones with "primary property coverage" containing "an $800,000 limit for the building on the Property." (*Id.* ¶ 13 (citing D.E. No. 1-3 (Ex. C to Compl.)).[3] In addition, Plaintiff insured Stones with "a casualty coverage limit of $100,000 for Fire." (*Id.* ¶ 15 (citing D.E. No. 1-4 (Ex. D to Compl. ("Cumberland Policy" or "CP")))).

---

[1]  The factual background is taken from the allegations in the Complaint. For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2]  On May 27, 2025, at the parties' joint request and in light of both their progress with discovery and the "likelihood that a decision on the [M]otion will either dispose of the [Subrogation Action] or streamline the remainder of discovery," the Honorable José R. Almonte, U.S.M.J., stayed the Subrogation Action pending the outcome of Defendants' Motion in the instant case. *AmGuard Ins. Co. v. Stones by Vincenzo, Inc.*, No. 22-5519 (ES) (JRA), D.E. No. 86 (May 27, 2025).

[3]  Because Defendants attached a complete copy of the Scottsdale Policy to their moving brief, and because Plaintiff does not dispute the authenticity of the same, the Court will cite to Defendants' exhibit when referring to the Scottsdale Policy. (*See* D.E. No. 36-3, Ex. 4 to D.E. No. 36 (Declaration of Marci G. Kokalas ("Kokalas Decl.")) ("Scottsdale Policy" or "SP")). For ease of reference, all pin citations to the relevant policies discussed herein are to the page numbers automatically generated by this Court's CM/ECF Case Management System.

On May 7, 2024, Plaintiff filed the Complaint on the basis of diversity jurisdiction seeking three Counts of declaratory relief. (*See generally* Compl.). In **Count I**, Plaintiff alleges that the Scottsdale Policy "insures Stones on a primary basis with a limit of $800,000 for damages incurred by the fire." (*Id.* ¶ 20). Pursuant to the Cumberland Policy—specifically, "Section IV – Commercial General Liability Conditions, Paragraph 4.b.(1)"—Plaintiff asserts that its policy "is excess to the Scottsdale Policy." (*Id.* ¶ 21). Plaintiff further maintains that pursuant to the Cumberland Policy, specifically "Paragraph 6 of Section III – Limits of Insurance[,] . . . the most [Plaintiff] is obligated to pay on behalf of Stones is $100,000 once the Scottsdale Policy is exhausted." (*Id.* ¶ 22). Accordingly, under **Count I**, Plaintiff seeks a declaration that states the following: (i) the "Cumberland Policy is excess to the Scottsdale Policy"; (ii) Plaintiff "has no duty to defend Stones because it is excess to the Scottsdale Policy"; (iii) the most Plaintiff "will pay once the Scottsdale Policy is exhausted is $100,000"; (iv) Plaintiff "is entitled to attorneys' fees and costs"; and (v) any "[s]uch other relief this Court deems just and proper." (*Id.*).

In **Count II**, Plaintiff alleges that under the Scottsdale Policy—specifically the "Building and Personal Property Coverage Form" section and subsection E.4.f (entitled "Loss Conditions," "Loss Payment")—Scottsdale "has an obligation to provide Stones a defense to the [Subrogation] Action." (*Id.* ¶ 24). Despite this provision, Plaintiff has been providing Stones a defense to the Subrogation Action rather than Scottsdale. (*Id.* ¶¶ 25–26). Under the Cumberland Policy— specifically, "Section IV – Commercial General Liability Conditions," and subsection 4 (entitled "Other Insurance")—Plaintiff asserts that it "is entitled to reimbursement by Scottsdale of all fees and costs [Plaintiff] had incurred and will incur in defending Stones in the [Subrogation] Action." (*Id.* ¶¶ 27–28). Accordingly, under **Count II**, Plaintiff seeks a declaration that states the following: (i) "Scottsdale shall reimburse Cumberland for the fees and costs that it has incurred in defending

3

Stones in the [Subrogation] Action, along with associated interest"; (ii) "Scottsdale shall replace Cumberland in the defense of Stones in the [Subrogation] Action"; and (iii) any "[s]uch other relief this Court deems just and proper." (*Id.* ¶ 29).

In **Count III**, Plaintiff asserts that the November 9, 2021 fire in the building on the Property "is a covered cause of loss" under the AmGuard Policy as "a primary property policy for RLM." (*Id.* ¶ 32; *see also id.* ¶ 31 (citing to Section I.A.1 of the AmGuard Policy)). Pursuant to the Cumberland Policy—specifically, "Section IV – Commercial General Liability Conditions, Paragraph 4.b.(1)"—Plaintiff asserts that its policy "is excess to the AmGuard Policy." (*Id.* ¶ 33). Plaintiff further maintains that pursuant to the Cumberland Policy—specifically "Paragraph 6 of Section III – Limits of Insurance"—"the most [Plaintiff] is obligated to pay on behalf of Stones is $100,000, once the Scottsdale Policy is exhausted." (*Id.* ¶ 35).[4] Accordingly, under **Count III**, Plaintiff seeks a declaration that states the following: (i) the AmGuard Policy "is primary in this matter, along with the Scottsdale Policy"; (ii) the Cumberland Policy "does not have to respond to the loss until the Scottsdale Policy is exhausted"; (iii) the most Plaintiff "will pay once the Scottsdale Policy is exhausted is $100,000"; (iv) Plaintiff "is entitled to attorneys' fees and costs"; and (v) any "[s]uch other relief this Court deems just and proper." (*Id.*).

## II.     LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79

---

[4]     The Complaint skips Paragraph 34. (*See* Compl. ¶¶ 33 & 35).

4

(quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))).  Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

Here, Plaintiff attached the AmGuard Policy, Scottsdale Policy, and the Cumberland Policy

to its Complaint (*see* Exs. B, C, and D to Compl.) and, as noted above, Defendants attached a full version of the Scottsdale Policy to its motion to dismiss (*see* Ex. 4 to Kokalas Decl.). The parties do not dispute those documents' authenticity or the Court's consideration of the same. (*See generally* Mov. Br. & Reply Br.). Thus, the Court will consider each of the relevant policies.

### III. DISCUSSION

"Where parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." *Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 263 (D.N.J. 2024) (quoting *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 229, 2023 WL 6366013, at *2 (D.N.J. Sept. 29, 2023) (citation modified) (collecting cases). Here, the parties brief the issues under New Jersey law. (*See generally* Mov. Br., Opp. Br. & Reply Br.). Thus, the Court will apply New Jersey law to the parties' dispute.

Under New Jersey law, the Court must interpret an insurance policy, as a matter of law, "according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992); *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012). Where an ambiguity in the terms of the policy creates doubt regarding the existence of coverage, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). However, where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)).

### A.     Count I – Priority of Coverage (Scottsdale)

As it pertains to Count I, Defendants ask the Court to reject Cumberland's priority of coverage argument because the relevant insurance policies insure different interests. (Mov. Br. at 11–15). Specifically, Defendants assert that "the Cumberland Policy extends *liability coverage* to Stones for the Loss" while "the Scottsdale Policy is a *first-party property policy* and provides no liability coverage." (*Id.* at 12 (emphasis in original)). Stated differently, "the Cumberland Policy provides third-party liability coverage, *i.e.*, defense and indemnification for Stones' alleged liability for the fire at issue in the Subrogation Action, while the Scottsdale Policy is intended to pay directly for damage to [the] insured (or covered) property, *e.g.*, the Premises, resulting from a covered loss, *e.g.*, a fire." (*Id.* at 14–15). For these reasons, Defendants argue that "the Cumberland Policy's [o]ther [i]nsurance provision is not triggered and the 'excess' provision upon which Cumberland relies does not apply." (*Id.* at 13).

In opposition, Plaintiff contends that "[b]oth the Scottsdale Policy and Cumberland Policy provide insurance to cover the same interest – *i.e.*, Stones – and the same risk – i.e., physical loss or damage, which here, includes damage by fire to the Subject Premises." (Opp. Br. at 8). Furthermore, Plaintiff argues that Defendants' cited cases fail to support their proposition that "the policies insure different interests just because the Scottsdale Policy provides property coverage and the Cumberland Policy provides liability coverage." (*Id.*; *see also id.* at 9–11). Plaintiff also maintains that nothing in the Cumberland Policy's "[o]ther [i]nsurance" provision "confines its operation strictly to other liability policies." (*Id.* at 9).

Defendants maintain their position in reply with few citations to additional case law. (*See* Reply at 2–8). Although Defendants consider Plaintiff's priority of coverage claim "irrelevant" such that it "fails as a matter of law" (*id.* at 3), they effectively concede the possibility that the

7

policies at issue can be read together under both applicable "other insurance" provisions, particularly if Stones is found liable in the Subrogation Action (*id.* at 8 n.6). Indeed, Defendants state that under both policies' "other insurance" provisions, "the Cumberland and Scottsdale Policies would be deemed co-primary." (*Id.*). As such, Defendants reserve the right to make this argument in the future should their Motion be denied. (*Id.*).

The parties agree that both the Cumberland Policy and the Scottsdale Policy provide insurance coverage for damage to the Property—including damage to the building premises owned by RLM and damage to Stones's business property—that resulted from the underlying fire. (*See generally* Mov. Br., Opp. Br. & Reply Br.).[5] The parties further agree that Cumberland issued Stones a "Commercial General Liability Policy" (*see* CP at 11), while Scottsdale issued Stones a "Commercial Property Policy" (*see* SP at 10 & 22–23). The difference, however, is that the Cumberland Policy covers Stones in the event Stones—as the insured—"***becomes legally obligated to pay* . . . *damages*** because of . . . [said] 'property damage.'"[6] (CP at 11, § I.1(a) "Section I – Coverages" – "Coverage A – Bodily Injury and Property Damage Liability" (emphasis added)). Furthermore, the Cumberland Policy provides that Plaintiff "will have the right and duty to defend the insured [Stones] against any 'suit' seeking those damages." (*Id.*). By contrast, the Scottsdale Policy insures Stones for building coverage (with an $800,000 limit) and business personal property coverage (with a $110,000 limit) when "direct physical loss of or damage to the Covered Property" is "caused by or resulting from a Covered Cause of Loss [i.e., a fire]." (SP at

---

[5] Although irrelevant to the pending Motion, the Court observes that Cumberland also issued Stones what appears to be limited commercial property coverage for "Business Income & EE," "Personal Property," and "Equipment Breakdown Enhancement" expenses. (CP at 2 & 6–7).

[6] The insurance in the Cumberland policy "applies to . . . 'property damage' . . . caused by an 'occurrence' that takes place in the 'coverage territory.'" (CP at 11, § I.1(a)). The parties do not dispute that the November 9, 2021 fire on the Property is an "occurrence" in a "coverage territory" under the Cumberland Policy. (*See, e.g.*, Compl. ¶¶ 10 & 19; Mov. Br. at 12; Opp. Br. at 7–8).

24 § A "Coverage").

The Court reads these policies as protecting the same covered loss—that is property damage to the building Stones occupied as tenant on the Property owned by RLM. Although Defendants discuss the relevant policies as falling within two separate and distinct categories—a first-party property policy (the Scottsdale Policy) and a third-party property policy (the Cumberland Policy) (*see generally* Mov. Br.)—it appears that the Scottsdale Policy acts as **both** a first-party policy that covers Stones's own business personal property **and** a third-party policy that covers property damage to RLM's building premises. *Cf. Righi Pallet Co. v. Maxum Indem. Co.*, No. 18-0922, 2020 WL 13169576, at *6 (M.D. Pa. Nov. 5, 2020) (noting that "[f]irst-party coverage[] . . . protects against loss caused by injury ***to the insured's own property***" (emphasis added)), *report and recommendation adopted*, No. 18-00922, 2021 WL 7967650 (M.D. Pa. Feb. 23, 2021). Indeed, based on this Court's review of the pleadings in the Subrogation Action, it appears that Scottsdale seeks a 50% contribution from AmGuard (as equal co-insurers of the loss under those policies' "other insurance" provisions) for payments Scottsdale made to Stones for damage to RLM's building premises—i.e., for damage to plumbing, electrical, building heaters, etc.[7] *See AmGuard Ins. Co. v. Stones by Vincenzo, Inc.*, No. 22-5519 (ES) (JRA), D.E. No. 76 (Nov. 20, 2024) (Scottsdale's Answer to Third-Party Complaint and Third Party Complaint at ¶¶ 15–29). Moreover, although both policies insure Stones for the same loss (i.e., property damage), the insured interest for coverage to the building premises is arguably held by RLM as the owner of the building premises. (*Compare* CP at 2, *with* SP at 10). Thus, while the Court acknowledges

---

[7]   The Court may take judicial notice of filings in the Subrogation Action before the Undersigned and the parties do not argue against the Court's consideration of the same. *See Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that the Court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010))).

that the Cumberland Policy protects Stones against the *risk* of *liability* it may incur to a third party for property damage that it may have caused, this distinction alone does not persuade the Court that Count I should be dismissed.

Even if Defendants are correct in that the policies protect different interests, a plain reading of the policies' respective "other insurance" provisions reflects that the policies contemplate co-existence with one another in the event Stones is found liable for property damage under the Cumberland Policy. This reading of the Cumberland Policy and Scottsdale Policy is bolstered by the argument Defendants reserve in reply—that is, when both policies' "other insurance" provisions are read together, Defendants maintain that "the Cumberland and Scottsdale Policies would be deemed co-primary." (Reply Br. at 8 n.6). Although the Court makes no determination as to whether the Cumberland Policy and Scottdale Policy are co-primary with one another—as this issue is not yet ripe—it appears Defendants intend to argue that the policies are co-primary if Stones is found liable for negligence in the Subrogation Action (and following the denial of Defendants' motion to dismiss Count I of the instant Complaint).

Both the Cumberland Policy and the Scottsdale Policy have "other insurance" provisions. The Cumberland Policy's "other insurance" provision provides, in relevant part:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> . . .
>
> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured *for a loss [Plaintiff] cover[s] under Coverages A or B* of this Coverage Part, [its] obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph b. below

10

        applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

    **b. Excess Insurance**

        (1) This insurance is excess over:

            (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

                (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

                (ii) That is ***Fire insurance for premises rented to you*** or temporarily occupied by you with permission of the owner;

                (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner . . .

(CP at 21–22, § IV.4(a)–(b) (emphasis added)). The Scottsdale Policy's "other insurance" provision states:

    **G. OTHER INSURANCE**

    1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

    2. If there is other insurance ***covering the same loss or damage, other than that described in 1. above***, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

(SP at 40 § G (emphasis added)).

11

Indeed, the "other insurance" provisions recited above account for instances in which the same loss or damage—i.e., property damage—is covered by the same type of policy—whether commercial liability policies or commercial property policies. (*Compare* CP at 22, § IV.4(b)(1)(a)(iii) (providing for priority of coverage when other insurance "is purchased by [Stones] to cover [its] *liability* as a tenant for 'property damage' to premises rented to [Stones] (emphasis added)), *with* SP at 40 § G.1 (providing for priority of coverage when other insurance is "subject to *the same plan, terms, conditions, and provisions* as the insurance in [the Scottsdale Policy]" (emphasis added))). However, the "other insurance" provisions also plainly provide for priority of coverage when *different* types of insurance policies cover the same loss or damage. (*Compare* CP at 22, § IV.4(b)(1)(a)(ii) (providing for priority of coverage when other insurance "is *Fire insurance for premises rented to* **[Stones]** or temporarily occupied by [Stones] with permission of the owner"), *with* SP at 40 § G.2 (providing for priority of coverage when other insurance "*cover[s] the same loss or damage, other than that described in 1. above*" (emphasis added))).[8]

Relatedly, although not addressed by any party, the Cumberland Policy's "other insurance" provision states, at the outset, that Plaintiff's "obligations are limited" "[if] other valid and collectible insurance is available to the insured *for <u>a loss</u> [Plaintiff] covers under Coverages A or B*." (CP at 22, § IV.4 (emphasis added)). Consistent with the Court's interpretation above, Defendants do not characterize the "loss" as Stones's liability expenses. (*See generally* Mov. Br.). Rather, Defendants appear to concede that "the Cumberland Policy extends *liability coverage* to

---

[8] The Court observes that when Defendants initially quoted the Scottsdale Policy's "other insurance" provision in their moving brief, they argued that "the Scottsdale Policy is not to be compared to the Cumberland Policy, which . . . , is not a policy with the 'same plan, terms, conditions, and provisions' as the Scottsdale Policy." (Mov. Br. at 14–15 n.4). This argument, however, is limited to Section G.1 of the Scottsdale Policy. By contrast, the argument Defendants reserve in reply accounts for Section G.2 of the Scottsdale Policy. (*Compare id.*, *with* Reply at 8 n.6).

12

Stones for the *Loss* [i.e., the fire]." (*Id.* at 12 (emphasis added)).  At this juncture, and without a case "on all fours" at the motion to dismiss stage,[9] the Court declines to read the Cumberland Policy's "other insurance" provision as applicable only to other liability policies.

Accordingly, because the Cumberland Policy and Scottsdale Policy seemingly may co-exist to insure Stones for the same loss—i.e., property damage to the building premises occupied by Stones as tenant—Defendants' motion to dismiss Count I is **DENIED**.

### B. Count II – Scottsdale's Duty to Defend

In its motion to dismiss Count II, Defendants argue that Scottsdale has no duty to defend Stones because the Scottsdale Policy contains language that renders Scottdale's election to defend Stones optional, not mandatory. (Mov. Br. at 15–16).  Instead, Defendants point to language in the Cumberland Policy that imposes an obligation on Plaintiff to defend Stones in the Subrogation Action by way of an explicit "duty to defend." (*Id.* (collecting cases from other jurisdictions analyzing the same contractual language)).  Defendants assert that "to the extent Cumberland's claim relies on its argument that the Cumberland Policy provides excess coverage, it likewise fails" for the same reasons Defendants argued above in Count I. (*Id.* at 16).

Plaintiff opposes, primarily arguing that Defendants' authorities from other jurisdictions are not persuasive under principles of New Jersey law. (Opp. Br. at 11–12).  Plaintiff maintains—without quoting the relevant language from the Scottdale Policy—that Scottsdale's promise to

---

[9] Although Defendants cite to various cases in support of its position, many are procedurally inapposite, non-binding, interpret other states' laws, and/or do not deal with the exact declaratory judgment claim, facts, and arguments before this Court.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Prot. Mut. Ins. Co.*, 607 F. Supp. 388, 390–91 (S.D.N.Y. 1985) (noting that "the St. Paul policy named only Trust as the insured and the Protection policy named only Pellon as its insured" and finding that "the two policies covered different insureds, moreover the insurable interests are clearly different" where "Pellon's interest was a leasehold while Trust's was in fee"), *on reargument*, 644 F. Supp. 38 (S.D.N.Y. 1986).  Indeed, although not cited by the parties, the Tenth Circuit recently disagreed with *St. Paul* when it rejected a party's attempt to invoke applicable "other insurance" provisions where "[b]oth policies protected the Barnard building against the risk of fire damage." *Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1340–41 (10th Cir. 2017).

defend Stones is illusory. (*Id.* at 12). Plaintiff considers its current defense of Stones in the Subrogation Action as arising under "paragraph 4.b.(2) of the Cumberland Policy," which sets forth Plaintiff's obligation to defend when its policy is "excess." (*Id.* at 13). Pursuant to this provision, Plaintiff believes it is entitled to recover fees and expenses from its defense of Stones.

In reply, Defendants stand by the plain reading of the policies' language. (Reply Br. at 9). In doing so, they argue that Scottsdale could not have made an illusory promise to defend Stones because it has no explicit "'duty' to defend" its insured. (*Id.* at 9 n.7). As a third-party liability policy, Defendants argue that Cumberland has a duty to defend Stones whereas Scottsdale's first-party property policy is "not intended to provide liability coverage for [Stones as its] insured." (*Id.* at 10). To the extent Plaintiff suggests that Scottsdale is in breach of its duty of good faith "in processing Stones'[s] first-party claim" it "has no basis in fact" and is irrelevant to Plaintiff's declaratory judgment action. (*Id.*).

To determine whether an insurance company has a duty to defend under New Jersey Law, the court must "compar[e] the allegations in the complaint with the language of the policy." *Voorhees*, 607 A.2d at 1259. "To make that determination, the complaint is placed alongside the policy and the test is whether the allegations of that complaint, upon its face, fall within the risk insured against." *W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 970 A.2d 382, 391 (N.J. App. Div. 2009). In comparing those documents, "it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." *Flomerfelt v. Cardiello*, 997 A.2d 991, 998 (N.J. 2010). "When the two correspond, the duty to defend arises[.]" *Voorhees*, 607 A.2d at 1259.

Here, the Cumberland Policy states, in relevant part, that

> [Plaintiff] will pay those sums that [Stones] becomes legally obligated to pay as damages because of 'bodily injury' or 'property

14

> damage' to which this insurance applies. **[*Plaintiff*] *will have the* right and *duty to defend* [*Stones*] *against any 'suit' seeking those damages.*** However, [Plaintiff] will have no duty to defend [Stones] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

(CP at 11 § I.1(a) – "Section I – Coverages" – "Coverage A – Bodily Injury and Property Damage Liability" (emphasis added)). On the other hand, the Scottsdale Policy provides that "**[*Scottsdale*] *may elect to defend* [*Stones*] *against suits arising from claims of owners of property.*** [Scottsdale] will do this at [its] expense." (SP at 34 § E(4)(f) – "Loss Conditions . . . Loss Payment" (emphasis added)).

Even a cursory review of the negligence allegations in the Subrogation Action's amended complaint against Stones suggests that they "fall within the risk insured against" in the Cumberland Policy. *See Voorhees*, 607 A.2d at 1255; *see also AmGuard Ins. Co. v. Stones by Vincenzo, Inc.*, No. 22-5519 (ES) (JRA), D.E. No. 63 ¶¶ 8, 17–21 (Sept. 27, 2024) (alleging that Stones negligently placed "combustible materials in, on and/or near the wood-burning stove at the subject property" and left the stove "in an active and operating condition while unattended overnight"). Moreover, the Court agrees that a plain reading of the above-quoted language from the Cumberland Policy imposes an express duty on Plaintiff to defend Stones under the circumstances set forth in Section I.1(a). (*See* CP at 11 § I.1(a) ("[Plaintiff] ***will have the*** right and ***duty to defend*** [***Stones***] against any 'suit' seeking those damages." (emphasis added)); *see also* Mov. Br. at 15–16). By contrast, the plain and unambiguous language in Section E(4)(f) of the Scottsdale Policy provides Scottsdale with the option to defend Stones. (SP at 34 § E(4)(f) ("[***Scottsdale***] ***may elect to defend*** [***Stones***] against suits arising from claims of owners of property." (emphasis added)).[10]

---

[10] The absence of case law interpreting identical language under New Jersey law is of no moment. Indeed, the Court's independent research did not reveal a case that assessed the same language in a dispute governed by New Jersey law. Thus, Defendants' reliance on authorities from other jurisdictions is persuasive, particularly when there is one plain, ordinary, and unambiguous reading of provisions at issue. (*See* Mov. Br. at 15–16). Moreover, Plaintiff

However, as the parties acknowledge, the Cumberland Policy contains additional language regarding Plaintiff's duty to defend when its coverage is excess to another insurance policy. (Mov. Br. at 16; Opp. Br. at 13). Specifically, the Cumberland Policy's "other insurance" provision provides, in relevant part:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> . . .
>
> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss [Plaintiff] cover[s] under Coverages A or B of this Coverage Part, [its] obligations are limited as follows:
>
> . . .
>
> **c. Excess Insurance**
>
> . . .
>
>> (2) ***When this insurance is excess, [Plaintiff] will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer <u>has a duty to defend</u> the insured against that 'suit.'*** If no other insurer defends, [Plaintiff] will undertake to do so, but [Plaintiff] will be entitled to the insured's rights against all those other insureds.

(CP at 21–22, § IV.4(b)(2) (emphasis added)). Accordingly, under this provision, even if the Cumberland Policy is excess to the Scottsdale Policy, Plaintiff cannot relinquish its duty to defend as set forth above ***unless*** Scottsdale also has a clear "duty to defend" Stones in the Subrogation Action under the Scottsdale Policy. (*See id.*). As noted above, the Scottsdale Policy provides that it "***may elect***" to defend Stones in the Subrogation Action. (SP at 34 § E(4)(f)). This language

---

does not proffer an alternative interpretation that is "objectively reasonable," nor does it sufficiently explain how—in its view—Scottsdale's alleged promise to defend is "illusory." (*See* Opp. Br. at 11–12).

does not impose a mandatory duty to defend on Scottsdale, but rather provides Scottsdale with the option to defend Stones—a decision that is within Scottsdale's discretion.

For these reasons, the relevant policy language does not impose on Scottsdale a duty to defend Stones in the Subrogation Action. Thus, Defendants' motion to dismiss Count II is **GRANTED** and Count II of Plaintiff's Complaint is **DISMISSED** *without prejudice.*

### C. Count III – Priority of Coverage (AmGuard)

In moving to dismiss Count III, Defendants make essentially the same arguments recounted above in connection with Count I. (*See* Mov. Br. at 16–18; *see also* Reply Br. at 13–17). Akin to Count I, Plaintiff maintains that the "other insurance" provision in the Cumberland Policy renders it excess to the AmGuard Policy, "which is the same policy form as the Scottsdale Policy." (Opp. Br. at 13–14). However, unlike the Cumberland Policy and Scottsdale Policy, the parties acknowledge that the AmGuard Policy insures RLM as property owner—not Stones. (Mov. Br. at 18; Opp. Br. at 13; *see also* AP at 2).

As noted above, the Cumberland Policy's "other insurance" provision applies "[if] other valid and collectible insurance is available ***to the insured*** [i.e., Stones] for a loss [Plaintiff] covers under Coverages A or B." (CP at 22, § IV.4 (emphasis added)). Thus, to work in Plaintiff's favor, Stones must be an insured under the AmGuard Policy or RLM must be an insured under the Cumberland Policy.

As conceded by the parties, the record before this Court reflects that RLM is the insured under the AmGuard Policy. (AP at 2; Mov. Br. at 18 ("AmGuard insures RLM for first-party property damage benefits."); Opp. Br. at 13 ("AmGuard insures RLM, the landlord of the Subject Property and the building, under the AmGuard Policy."); Compl. ¶ 11 ("Amguard insured RLM for the building on the Property.")). The Court's review of the record reflects that Stones is not a

covered insured under the AmGuard Policy. (*See generally* AP). Neither the Complaint nor the parties' briefs suggest otherwise. (*See generally* Compl.; Mov. Br.; Opp. Br.; Reply Br.).

Furthermore, Stones is the only clear insured under the Cumberland Policy. (*See generally* CP). The Cumberland Policy defines "insured" to mean "any person or organization qualifying as such under Section II – Who is An Insured." (CP at 11 (preamble)). Under Section II of the Cumberland Policy entitled "Who is An Insured" only those persons specifically "designated in the Declarations as" one of five categories qualifies as an insured. (*Id.* at 19 § II.1(a)–(e)). Specifically, those categories include: (i) individuals and spouses; (ii) partnerships or joint ventures; (iii) limited liability companies; (iv) organizations other than a partnership, joint venture, or limited liability company; and (v) trusts. (*Id.*). Indeed, the declaration pages before the Court state that the name of the insured is "Stones by Vincenzo Inc." (*Id.* at 2). After its careful review of the motion record, the Court has not identified anything to suggest that RLM is not an insured under the Cumberland Policy; nor do the parties argue as much. (*See generally id.*; *see also* Compl.; Mov. Br.; Opp. Br.; Reply Br.).

Accordingly, because the Cumberland Policy's "other insurance" provision appears limited to other policies issued to Stones as the insured, Defendants' motion to dismiss Count III is **GRANTED** and Count III of Plaintiff's Complaint is **DISMISSED** *without prejudice*.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in-part** and **DENIED in-part**. An appropriate Order accompanies this Opinion.

Dated:  October 3, 2025                                                                    s/ *Esther Salas*
                                                                                                        **Esther Salas, U.S.D.J.**